## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WANDA RICHARDSON,<br>Mother and Next Friend of W.R., a Minor,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.,*<br><br>Defendants. | Civil Action No. 06-2121 (CKK) |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, and LCvR 56.1, Defendants District of Columbia and (former) District of Columbia Public Schools Superintendent Clifford Janey,[1] by counsel, here moves for summary judgment in this matter.  The basis for this motion is that Plaintiff's challenge to the District of Columbia Public Schools Hearing Officer's Determination in this case lacks merit because that decision was proper and consistent with the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 *et seq.*

A memorandum of points and authorities, a statement of material facts as to which there is no genuine issue, and a table of authorities are attached hereto.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

---

[1] Recently, Chancellor Michelle Rhee replaced Superintendent Janey.

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich [RCU]**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
E-mail: Eden.Miller@dc.gov

July 12, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WANDA RICHARDSON, | ) | |
| Mother and Next Friend of W.R., a Minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-2121 (CKK) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| A municipal corporation, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff here appeals a District of Columbia Public Schools ("DCPS") Hearing

Officer's Decision ("HOD"), issued on September 14, 2006, pursuant to the Individuals

with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq.*

("IDEIA"). Plaintiff asserts that the Hearing Officer erred in finding that DCPS did not

deny WR a free appropriate public education ("FAPE") when it determined that WR was

not eligible for special education and related services. The Hearing Officer correctly

found that DCPS complied with the IDEIA when it determined that it required

information from WR's treating psychiatrist before classifying WR as Emotionally

Disturbed ("ED"). Thus, Plaintiff's claim is without merit.

Disabled students are entitled to a FAPE. 20 U.S.C § 1412(a)(1). Once a student

is suspected of a disability, the school system (local education agency) must determine

whether that child is eligible to receive special education and related services. 20 U.S.C

3

§ 1414(a).  A multidisciplinary team ("MDT"), consisting of the student's parents,

teachers, and other educational specialists, meet and confer in a collaborative process to

consider relevant functional, developmental and academic information about the student

to determine eligibility.  20 U.S.C § 1414(b).  At times, the team may request additional

information or assessments to assist in its determinations.  *Id.*  If the student is deemed

eligible, the team then will create an individualized education program ("IEP") designed

to provide the student with a FAPE.  20 U.S.C. §1414(d)(1)(B).  The IEP is the written

statement from the meeting that includes, among other things, goals and instructional

objectives, services to be provided, projections regarding the dates when such services

will be offered, and criteria for evaluating whether instructional objectives are being met.

20 U.S.C. §1414(d)(1)(A); 20 U.S.C. § 1401(14).  Should the parent disagree with a

determination of an IEP team, he or she may seek a due process hearing.  20 U.S.C. §

1415(c)(2) and (f).

## STANDARD OF REVIEW

### I.      Summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to

summary judgment if "there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw

all reasonable inferences from the records submitted by the nonmoving party, the mere

existence of a factual dispute, by itself, is insufficient to bar summary judgment.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  To be genuine, the issue

must be supported by evidence sufficiently admissible that a reasonable trier of fact could

find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  *Id*.; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEIA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997).  Factual determinations of the hearing officer are to be accorded due weight.

## II.    <u>Review of administrative decisions under the IDEIA.</u>

The IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them." *Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Bd. of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect. *Angevine v. Smith*, 959 F.2d 292, 295 (D.C. Cir. 1992); *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons*, 829 F. Supp. at 418. This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. *Rowley*, 458 U.S. at 207-08. Accordingly, this Court must give the hearing officer's determination "due weight," and Plaintiff, in order to prevail, must show by a "preponderance of the evidence" that the hearing officer was wrong.

Because the subject HOD was appropriate in all respects challenged by Plaintiff, she cannot make the required showing, and this Court should grant summary judgment to the Defendants.

## STATEMENT OF THE RELEVANT FACTS

WR is an eleven-year old resident of the District of Columbia, who at the time of the subject HOD attended Assumption Catholic School, a private school in the District of Columbia with no special education program. Administrative record, filed May 23, 2007, page 6 (citations to the administrative record will hereinafter appear "R. at _____"). Prior to attending third and fourth grade at Assumption during the school years ("SY") 2004-2005 and 2005-2006, WR attended part of second grade at Ann Beers Elementary School, a school within the DCPS system. R. at 66. Before that, WR attended public

schools in Maryland for part of second grade, first grade and kindergarten.  R. at 6, 63,

115.  While at Longfields Elementary School in Maryland (for part of the second grade),

on April 1, 2004, an MDT developed an IEP for WR, and listed his primary disability as

Emotional Disturbance ("ED").  R. at 6, 31.

On August 20, 2004, DCPS School Psychologist Anthony White prepared a

Psycho-Educational Evaluation Report, based on his evaluation of WR.  R. at 4, 66.  In

his report, Mr. White concluded that WR did "not meet the criteria for special education

services as a learning disabled student," but recommended that a clinical psychological

evaluation be conducted to "determine if [WR's] social-emotional functioning is having a

negative impact on his achievement."  R. at 4-5, 69.

In the fall of 2004, Plaintiff enrolled her son at Assumption.[2]  R. 6.  On December

12, 2005, School Social Worker Alice Wilson of Assumption referred WR to DCPS for

testing for possible special education eligibility because of his behavioral problems and

poor academic performance.  R. at 5-6, 84.  In the referral form she submitted to DCPS,

Ms. Wilson indicated that WR was receiving private therapy, but no special education or

related services from Assumption.  R. 5, 84.  On December 14, 2005, the DCPS Central

Assessment Referral and Evaluation ("CARE") Center, which handles among other

things, referrals for special education from private religious schools, convened an MDT

meeting and developed a Student Evaluation Plan for WR.  R. at 5, 52.

On February 9, 2006, School Psychologist for DCPS Yvonne Rojas prepared a

Psychological Report Review[3] based on the following: her two observations of WR in his

---

[2] The Assumption School Social Worker did not receive a copy of WR's Maryland IEP, but even if she had, Assumption does not provide special education services and could not have implemented the IEP.  R. at 6.

[3] Ms. Rojas tested WR on January 9, 2006, and completed her report on February 9, 2006.  R. at 118-126.

classroom at Assumption and reviews of the August 20, 2004, Psycho-Educational Report; the Assumption School Counselor's classroom observation reports and other school reports; the materials Ms. Wilson submitted with the referral packet; and four tests including BASC II Teacher Rating Scales, and BASC II Parent Rating Scales.  R. at 5, 118-119.

In her report, Ms. Rojas noted that when he was three and a half years old, WR had been diagnosed with Attention Deficit Hyperactive Disorder and Oppositional Defiant Disorder.  R. at 5, 118.  His teacher at Assumption reported disruptive and aggressive behaviors (R. at 123), and his mother said that he has difficulty controlling his behavior and mood.  R. at 125.  Ms. Rojas, however, indicated that WR's behavior during her classroom observations, as well as his behavior as noted in the Assumption School Counselor's classroom observations, "seemed different from the behaviors described by his parent and teacher."  R. at 5, 118.  Ms. Rojas observed him to be "pleasant, cooperative and attentive" with "no indications of defiance, or hostile behavior, and he was compliant."  R. at 120.

Ms. Rojas, like Dr. White, also determined that WR did not meet the criteria for special education services as a LD student (R. at 5, 125) because "[h]is academic skills are commensurate with his cognitive abilities."  R. at 125.  She went on to recommend that an MDT meet to discuss his assessments and possible need for services, as well as follow-up with regard to his current clinical treatment.  R. at 5, 125.

On February 9, 2006, DCPS Social Worker Gloria Everett conducted a Social Work Evaluation Report based on her interview with WR's mother.  R. at 5, 107.  In her report, Ms. Everett stated that WR began receiving psychological services at age three,

and qualified for Social Security Income Benefits as an emotionally disturbed child at age

five.  R. at 5, 109.  She also indicated that WR has a psychiatric history, but that this

information was not released to her.  R. at 5, 112.

    After the completion of the evaluations, DCPS convened an MDT meeting on

May 10, 2006, to discuss whether WR was eligible for special education services.  R. at

5, 127.  As the Hearing Officer noted:

> [Ms. Everett] testified that the parent had informed the
> MDT that the student was seeing a psychiatrist.  The parent
> also requested that DCPS conduct a psychiatric evaluation
> of the student; however, the DCPS team concluded that
> since the student was already seeing a psychiatrist, it would
> be better to first get information from that person, rather
> than conduct a new evaluation.  Therefore, DCPS requested
> that the mother provide the information from the student's
> treating medical provider and the mother told the team that
> the information would be provided.  Ms. Everett informed
> the parent that she would help with getting the information,
> but the parent had to sign a release form that would
> authorize DCPS to obtain the information.  The information
> was needed because it would help support the diagnosis of
> the student.  Ms. Everett also stated that the parent
> informed the team that she was told not to give DCPS the
> information from the psychiatrist who had been treating the
> student.

R. at 5.  As of the date of the hearing, DCPS had not received the signed release form

from the mother.  R. at 6.  On two occasions, Ms. Everett had mailed a blank medical

release form to the mother at the same mailing address listed on the Due Process

Complaint Notice which initiated the hearing.  R. at 6.

    At the May 11, 2006, MDT meeting, after reviewing the available evaluations and

reports, the team determined that WR was not eligible for special education services at

that time, but agreed to reconvene once DCPS received information from WR's current

medical providers.  R. at 6.  On June 5, 2006, Plaintiff filed a Due Process Complaint

Notice to challenge DCPS' determination that WR was not eligible for special education services.  R. at 139.  A hearing convened on August 29, 2006.  R. at 9.

At the due process hearing, Psychologist Derek Marryshow opined that WR should qualify for special education as ED and possibly Other Health Impaired.[4]  R. at 6-7.  Dr. Marryshow also testified on cross examination that information from WR's provider is important to have, but that there was sufficient information without provider information to warrant an ED classification.  R. at 7.  Further, Dr. Marryshow testified that if a student requiring special education services attends a school without such services, it could be detrimental to the student.  R. at 7.

Admissions Director David Clark of High Road School, a private school in the District with a special education program, also testified at the hearing.  R. at 7.  He indicated that the student had been accepted into High Road on September 14, 2006 (the day of the hearing) upon review of his evaluations and a meeting with WR and his mother.  R. at 7.

On September 14, 2006, the Hearing Officer issued an HOD, finding for DCPS. R. at 2-12.  In making his decision, the Hearing Officer considered DCPS Exhibits 01-10, and WR Exhibits 01-17, as well as the audio recordings of the hearing.  R. at 11.  He also heard testimony from six witnesses including DCPS Social Worker Gloria Everett, DCPS School Psychologist Yvonne Rojas, Assumption Social Worker Alice Wilson, Psychologist Derek Marryshow, High Road Admissions Director David Clark, and Mother Wanda Richardson.  R. at 3, Transcript at 2.

The Hearing Officer specifically found that:

---

[4] Pointedly, the Hearing Officer found that Dr. Marryshow had not been properly offered as an expert, and therefore had not been found competent to give expert testimony.  R. at 6.

> [t]he record here is clear that the student has been seeing a psychiatrist for several years. It is reasonable to assume that the treating psychiatrist may have information relevant for the student's disability classification and therefore reasonable for DCPS to request the information. Based on the testimony of Ms. Everett, whose testimony is deemed credible, DCPS told the parent that [Ms. Everett] would assist in obtaining the information, but needed the release form, which the parent has failed to provide. It must be noted that an MDT meeting should involve the good faith participation of all parties. Therefore, if information was available that the team considered important to be considered and was willing to assist in obtaining it, then steps in that direction should have been taken.

R. at 8. The Hearing Officer found that "DCPS' argument of not pursuing another evaluation if the information may already be available from the student's treating psychiatrist is reasonable. In that regard, Ms. Everett's testimony is viewed as credible." *Id.* In support of his decision, the Hearing Officer also concluded that the record showed a discrepancy between the behavior described by WR's teacher at Assumption and the behavior observed by Ms. Rojas. *Id.* Further, the Hearing Officer found that the mother chose to have WR attend Assumption—a private school with no special education services—for two years. *Id.*

## ARGUMENT

### The Hearing Officer considered all of Plaintiff's evidence and arguments, and his ultimate determinations should be deferred to in this case.

At the due process hearing, Plaintiff had a full opportunity to present evidence and argument to support her requests for relief to the Hearing Officer. In his decision, the Hearing Officer took into account all of the evidence offered, and legal arguments made. Indeed, the decision was a reflective consideration of both the parties' positions and the best interests of the student. The relief ordered was designed to take the particular

circumstances of the student into account, and was based on experience in the confronting of such educational problems.

While Plaintiff may request this Court to disregard the Hearing Officer's conclusions, and to make an independent (and different) determination of the appropriate relief, there is no basis for the Court to conclude either that the Hearing Officer did not properly consider the evidence submitted, or that his expressed views are not entitled to conclusive deference by this Court.  In fact, the HOD narrates in detail the chronology and content of the student's various evaluations, his Maryland IEP and his school performance, as well as DCPS' proper efforts to determine eligibility and to obtain the best information available regarding WR. R. at. 4-8.  The Hearing Officer fully considered the parties' documentary evidence, weighed the testimony offered by the parties' witnesses and explained the basis for his conclusions.

The amount of deference given to an administrative hearing officer's decision is based in part on whether the findings reached were "thorough and complete." *See*, e.g., *Adams v. State of Oregon*, 195 F.3d 1141, 1145 (9th Cir. 1999); *see also S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  In this case, the administrative findings and conclusions were both thorough and complete, were legally correct, and should be summarily affirmed.

## CONCLUSION

This Court should uphold the subject HOD because it was proper and consistent with the IDEIA in law and in spirit.  Accordingly, Plaintiff's motion for summary

judgment should be denied, and the Defendants' present motion should be granted.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich [RCU]**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
July 12, 2007                                    E-mail: Eden.Miller@dc.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WANDA RICHARDSON, ) | |
| Mother and Next Friend of W.R., a Minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2121 (CKK) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| A municipal corporation, *et al.,* ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE ISSUE AND RESPONSE**

Pursuant to Local Civil Rule 56.1, Defendants submit this statement of material facts as to which there is no genuine issue:

1. WR is an eleven-year old resident of the District of Columbia, who at the time of the subject HOD attended Assumption Catholic School, a private school in the District of Columbia with no special education program.  Administrative record, filed May 23, 2007, page 6 (citations to the administrative record will hereinafter appear "R. at _").

2. Prior to attending third and fourth grade at Assumption during the school years ("SY") 2004-2005 and 2005-2006, WR attended part of second grade at Ann Beers Elementary School, a school within the DCPS system.  R. at 66.

3. Before that, WR attended public schools in Maryland for part of second grade, first grade and kindergarten.  R. at 6, 63, 115.

4. While at Longfields Elementary School in Maryland (for part of the second grade), on April 1, 2004, an MDT developed an IEP for WR, and listed his primary disability as Emotional Disturbance ("ED").  R. at 6, 31.

5. On August 20, 2004, DCPS School Psychologist Anthony White prepared a Psycho-Educational Evaluation Report, based on his evaluation of WR.  R. at 4, 66.

6. In his report, Mr. White concluded that WR did "not meet the criteria for special education services as a learning disabled student," but recommended that a clinical psychological evaluation be conducted to "determine if [WR's] social-emotional functioning is having a negative impact on his achievement."  R. at 4-5, 69.

7. In the fall of 2004, Plaintiff enrolled her son at Assumption.[5]  R. 6.

8. On December 12, 2005, School Social Worker Alice Wilson of Assumption referred WR to DCPS for testing for possible special education eligibility because of his behavioral problems and poor academic performance.  R. at 5-6, 84.

9. In the referral form she submitted to DCPS, Ms. Wilson indicated that WR was receiving private therapy, but no special education or related services from Assumption.  R. 5, 84.

10. On December 14, 2005, the DCPS Central Assessment Referral and Evaluation ("CARE") Center, which handles among other things, referrals for special education from private religious schools, convened an MDT meeting and developed a Student Evaluation Plan for WR.  R. at 5, 52.

---

[5] The Assumption School Social Worker did not receive a copy of WR's Maryland IEP, but even if she had, Assumption does not provide special education services and could not have implemented the IEP.  R. at 6.

11. On February 9, 2006, School Psychologist for DCPS Yvonne Rojas prepared a Psychological Report Review[6] based on the following: her two observations of WR in his classroom at Assumption and reviews of the August 20, 2004, Psycho-Educational Report; the Assumption School Counselor's classroom observation reports and other school reports; the materials Ms. Wilson submitted with the referral packet; and four tests including BASC II Teacher Rating Scales, and BASC II Parent Rating Scales. R. at 5, 118-119.

12. In her report, Ms. Rojas noted that when he was three and a half years old, WR had been diagnosed with Attention Deficit Hyperactive Disorder and Oppositional Defiant Disorder. R. at 5, 118.

13. His teacher at Assumption reported disruptive and aggressive behaviors (R. at 123), and his mother said that he has difficulty controlling his behavior and mood. R. at 125.

14. Ms. Rojas, however, indicated that WR's behavior during her classroom observations, as well as his behavior as noted in the Assumption School Counselor's classroom observations, "seemed different from the behaviors described by his parent and teacher." R. at 5, 118.

15. Ms. Rojas observed him to be "pleasant, cooperative and attentive" with "no indications of defiance, or hostile behavior, and he was compliant." R. at 120.

16. Ms. Rojas, like Dr. White, also determined that WR did not meet the criteria for special education services as a LD student (R. at 5, 125) because "[h]is academic skills are commensurate with his cognitive abilities." R. at 125.

---

[6] Ms. Rojas tested WR on January 9, 2006, and completed her report on February 9, 2006. R. at 118-126.

17. She went on to recommend that an MDT meet to discuss his assessments and possible need for services, as well as follow-up with regard to his current clinical treatment.  R. at 5, 125.

18. On February 9, 2006, DCPS Social Worker Gloria Everett conducted a Social Work Evaluation Report based on her interview with WR's mother.  R. at 5, 107.

19. In her report, Ms. Everett stated that WR began receiving psychological services at age three, and qualified for Social Security Income Benefits as an emotionally disturbed child at age five.  R. at 5, 109.

20. She also indicated that WR has a psychiatric history, but that this information was not released to her.  R. at 5, 112.

21. After the completion of the evaluations, DCPS convened an MDT meeting on May 10, 2006, to discuss whether WR was eligible for special education services. R. at 5, 127.

22. As the Hearing Officer noted:

> [Ms. Everett] testified that the parent had informed the MDT that the student was seeing a psychiatrist.  The parent also requested that DCPS conduct a psychiatric evaluation of the student; however, the DCPS team concluded that since the student was already seeing a psychiatrist, it would be better to first get information from that person, rather than conduct a new evaluation.  Therefore, DCPS requested that the mother provide the information from the student's treating medical provider and the mother told the team that the information would be provided.  Ms. Everett informed the parent that she would help with getting the information, but the parent had to sign a release form that would authorize DCPS to obtain the information.  The information was needed because it would help support the diagnosis of the student.  Ms. Everett also stated that the parent informed the team that she was told not to give DCPS the information from the psychiatrist who had been treating the student.

R. at 5.

23. As of the date of the hearing, DCPS had not received the signed release form from the mother. R. at 6.

24. On two occasions, Ms. Everett had mailed a blank medical release form to the mother at the same mailing address listed on the Due Process Complaint Notice which initiated the hearing. R. at 6.

25. At the May 11, 2006, MDT meeting, after reviewing the available evaluations and reports, the team determined that WR was not eligible for special education services at that time, but agreed to reconvene once DCPS received information from WR's current medical providers. R. at 6.

26. On June 5, 2006, Plaintiff filed a Due Process Complaint Notice to challenge DCPS' determination that WR was not eligible for special education services. R. at 139.

27. A hearing convened on August 29, 2006. R. at 9.

28. At the due process hearing, Psychologist Derek Marryshow opined that WR should qualify for special education as ED and possibly Other Health Impaired.[7] R. at 6-7.

29. Dr. Marryshow also testified on cross examination that information from WR's provider is important to have, but that there was sufficient information without provider information to warrant an ED classification. R. at 7.

---

[7] Pointedly, the Hearing Officer found that Dr. Marryshow had not been properly offered as an expert, and therefore had not been found competent to give expert testimony. R. at 6.

30. Further, Dr. Marryshow testified that if a student requiring special education services attends a school without such services, it could be detrimental to the student.  R. at 7.

31. Admissions Director David Clark of High Road School, a private school in the District with a special education program, also testified at the hearing.  R. at 7.

32. He indicated that the student had been accepted into High Road on September 14, 2006 (the day of the hearing) upon review of his evaluations and a meeting with WR and his mother.  R. at 7.

33. On September 14, 2006, the Hearing Officer issued an HOD, finding for DCPS. R. at 2-12.

34. In making his decision, the Hearing Officer considered DCPS Exhibits 01-10, and WR Exhibits 01-17, as well as the audio recordings of the hearing.  R. at 11.

35. He also heard testimony from six witnesses including DCPS Social Worker Gloria Everett, DCPS School Psychologist Yvonne Rojas, Assumption Social Worker Alice Wilson, Psychologist Derek Marryshow, High Road Admissions Director David Clark, and Mother Wanda Richardson.  R. at 3, Transcript at 2.

36. The Hearing Officer specifically found that:

> [t]he record here is clear that the student has been seeing a psychiatrist for several years.  It is reasonable to assume that the treating psychiatrist may have information relevant for the student's disability classification and therefore reasonable for DCPS to request the information.  Based on the testimony of Ms. Everett, whose testimony is deemed credible, DCPS told the parent that [Ms. Everett] would assist in obtaining the information, but needed the release form, which the parent has failed to provide.  It must be noted that an MDT meeting should involve the good faith participation of all parties.  Therefore, if information was available that the team considered important to be

considered and was willing to assist in obtaining it, then
steps in that direction should have been taken.

R. at 8.

37. The Hearing Officer found that "DCPS' argument of not pursuing another

evaluation if the information may already be available from the student's treating

psychiatrist is reasonable. In that regard, Ms. Everett's testimony is viewed as

credible." *Id.*

38. In support of his decision, the Hearing Officer also concluded that the record

showed a discrepancy between the behavior described by WR's teacher at

Assumption and the behavior observed by Ms. Rojas. *Id.*

39. Further, the Hearing Officer found that the mother chose to have WR attend

Assumption—a private school with no special education services—for two years.

*Id.*

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich [RCU]**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
E-mail: Eden.Miller@dc.gov

July 12, 2007

# TABLE OF AUTHORITIES

## Federal Cases

*Adams v. State of Oregon*, 195 F.3d 1141 (9th Cir. 1999) ..........................................................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................................4, 5

*Angevine v. Smith*, 959 F.2d 292 (D.C. Cir. 1992) .......................................................................6

*Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Bd. of
    Educ.*, 2001 U.S. Dist. LEXIS 6994 (N.D. Ill., March 19, 2001).............................................5

*Board of Educ. of Hendrick Hudson Cent. Sch. District v. Rowley*, 458 U.S. 176
    (1982)..................................................................................................................................5, 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................4

*Heather S. v. Wisconsin*, 125 F.3d 1045 (7th Cir. 1997) .............................................................5

*Kerkam v. McKenzie*, 862 F.2d 884 (D.C. Cir. 1988)..................................................................6

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987)...........................................................5

*Lyons v. Smith*, 829 F. Supp. 414 (D.D.C. 1993)........................................................................6

*S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260 (3d Cir.
    2003) .....................................................................................................................................12

*Tao v. Freeh*, 27 F.3d 635 (D.C. Cir. 1994) ...............................................................................4

## Federal Statute

*Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 *et
seq.* ......................................................................................................................................1, 3

20 U.S.C. § 1401(14) ...................................................................................................................4

20 U.S.C. § 1412(a)(1).................................................................................................................3

20 U.S.C. § 1414(a) .....................................................................................................................3

20 U.S.C. § 1414(b) .....................................................................................................................4

20 U.S.C. §1414(d)(1)(B).............................................................................................................4

20 U.S.C. §1414(d)(1)(A)...................................................................................................................4

20 U.S.C. § 1415(c)(2)........................................................................................................................4

20 U.S.C. §1415(i)(2)(A)....................................................................................................................5

20 U.S.C. §1415(i)(2)(B)....................................................................................................................5

20 U.S.C. §1415(i)(2)(B)(iii)..............................................................................................................5