## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WANDA RICHARDSON, et al** | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | **Civ. Acton No. 06-2121(CKK)** |
| | * | |
| | * | |
| **DISTRICT OF COLUMBIA, et al** | * | |
| Defendants | * | |

**************************************

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiffs, W.R. and Wanda Richardson, by and through their attorneys Fatmata Barrie and The Law Offices of Christopher N. Anwah, PLLC, hereby moves this Honorable Court for summary judgment in favor of the Plaintiff as to all counts. As reasons therefore, Plaintiffs will establish that there exist no triable issues of material fact and that Plaintiffs are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, Plaintiffs, incorporate by reference the attached Memorandum of Points and Authorities.

WHEREFORE, Plaintiffs pray this Honorable Court to grant this Motion and enter summary judgment in favor of Plaintiffs as to all counts of the complaint.

        Respectfully submitted
        LAW OFFICES OF CHRISTOPHER N.
        ANWAH, PLLC

By:_____/s/FatmataBarrie/s/_____
        Fatmata Barrie, Bar #485122
        LAW OFFICES OF CHRSTOPHER N.
        ANWAH, PLLC
        10 R Street, NE
        Washington, D.C. 20002
        Phone: (202) 626-0040
        Fax: (202) 626-0048
        Email: fbarrie@verizon.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **WANDA RICHARDSON, et al** | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | **Civ. Action No. 07-665 (RWR)** |
| | * | |
| | * | |
| **DISTRICT OF COLUMBIA, et al** | * | |
| Defendants(s) | * | |

**************************************

**MEMORANDA OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

For reasons set forth herein, Plaintiffs are entitled to summary judgment as to all counts. The undisputed material facts of this case will establish, inter alia, that (i) DCPS violated IDEIA by not completing the evaluations within the appropriate timeframe as required under IDEIA and by violating the "child find" statute; (ii) DCPS failed to complete appropriate evaluations of the student and failed to evaluate him in all areas of suspected disability; (iii) DCPS failed to provide W.R. with an appropriate placement; (iv) DCPS failed to provide W.R. with appropriate IEP, special education and related services; (v) The hearing officer erred in not considering the merits of the case and the student's behavior in deciding the case.

On these controlling points there exist no genuine issue of material facts and accordingly, Plaintiffs are entitled to summary judgment as a matter of law.

**BACKGROUND FACTS**

At the time of the filing of this complaint, W.R. was a 10 year old student who was determined to need special education by Maryland but was not receiving special education and related services in DC while attending PR Harris, Beers, Assumptions Catholic School

2

(Assumptions) and now at Friendship Edison PCS.  His Maryland IEP calls for 21% to 60% of his time out-of-general education setting.  (AR.31)

W.R. was attending Beers ES and was not progressing academically or emotionally, and then he attended Assumptions Catholic School and again was not progressing academically or emotionally.  He is now attending Friendship Edison Public Charter School for this 2006/2007 school year.  During his attendance at Assumptions Catholic School he continued to exhibit behavioral and academic problems.

On 12/14/05, DCPS convened a MDT meeting at which time the team indicated that "[W.R.] is really struggling in school which impacts on his self-esteem.  Auditory processing is a problem.  He has difficulty following simple directions [,] organizing his work, and sequencing his thoughts.  [W.R] is in the 4th grade [and] did not start printing until the 3rd grade.  He writes like a 1st grader.  Reading appears to be on the first grade level."  (AR. 52)  During the meeting on 12/14/05, the team also stated that "school referral speaks to his areas of weakness being in all subject areas with the exception of math.  He presents with a low self-esteem, low attention span, [and] mood swings and anger is often exhibited with temper tantrums."  Id

 The 12/14/05 team also indicated that "[W.R.] plucks his ear until it bleeds, wanders off, and bangs on the table often. . . He was tak[ing] 27mg concerta & 50mg of Zoloft, and clonodin at night to sleep (0.1mg).  He use to take adderol but he had side-effects.  [W.R.] was diagnosed with a disability since the age of 3 years old."  Id

On 07/13/04, DCPS, by Gloria Everett, completed a Social Work Evaluation (SW) while he was attending Beers Elementary School (Beers) in DC. (AR. 56) The SW found that he was diagnosed with multiple mental health problems (both his parents suffer from depression and bipolar disease), and he is taking . . . Abilify for his schizophrenia; Bupropion SR for his depression; Benztropine . . . and Concerta for his ADHD and other behavioral problems.

According to the SW, when he is supposed to be at recess in school he will just leave.  He needs adult supervision at all times."  The evaluation further stated on page three (3) that "the family has experienced homelessness and repeated hospitalization of the mother."

On 08/20/04 DCPS completed a psycho-educational evaluation.  (AR. 66)  The evaluation found that "according to his teachers at Beers ES, [W.R.] is performing within the average range academically but his limited social skills impact his educational development.  It has been reported that [W.R.] has mood swings which endangers both him and his classmates."  The psycho-educational further found that he was evaluated on 12/14/99 at which time he was diagnosed with "Attention Deficit-Hyperactivity Disorder and Oppositional Defiant Disorder.  The diagnosis of Bipolar Disorder was deferred at that time but the examiner suggested that may also be accurate given [W.R.'s] family history."  The evaluation further recommended that a clinical psychological evaluation should be completed "to determine if his social-emotional functioning is having a negative impact on his achievement. . . [W.R.] should receive psycho-social counseling to address his negative classroom behaviors."

His report cards has him failing his classes and unsatisfactory in reference to his conduct.  His report cards indicated that he was disruptive in class, easily distracted, not prepared for class and needs to improve on turning in his assignments and completing his work.  (AR. 82)  According to the 12/12/05 Classroom Observation, [W.R.] could not sit still during class.  He walked from seat to seat, rocked his desk back and forth, bothered a peer behind the classroom barrier, walked out of class, walked back in, went to trash can without permission, actively looked for something to pick up from the floor and picks a pencil off the floor, and pushed his foot against the classroom divider.  (AR. 84)

The 12/12/05 teacher referral/report states that "[W.R.] has severely unpredictable behaviors which greatly interferes with [W.R.'s] work and academic progress."  The report also

indicates that he has weakness in reading, written expression, some parts of math, visual motor coordination, social/emotional and attention/organization. Id

On 01/09/06 DCPS completed a psychological report review.  (AR. 118)  The report states that during the review of records, the school psychologist shared that W.R. was diagnosed with ADHD in 1999.  The report indicates that a BASC-2 was completed and that a "clinically significant range suggest[s] a high level of maladjustment."  The evaluation found that W.R.'s T-Score in hyperactivity, aggression, anxiety, and depression falls in the Clinically Significant range.  His teacher reports that he is often restless, overactive, has difficulty controlling his impulse, displays aggressive behaviors, is argumentative, defiant and/or threatening to others, engages in rule-breaking behaviors, withdraws and he is pessimistic and sad. The psychological report continues by stating that suicidal tendencies should be explored and his learning problems are in the At Risk range which is classified as High in the adaptive scales category.  As to his Self Report in the psychological report review, W.R. indicated that "even when I am alone I feel some one is watching me, I hear voices in my head that no one else can hear, [and] I worry when I go to bed at night."

On 05/10/06 DCPS convened an eligibility meeting and the notes indicate that "according to the teacher, his grade level skills are below grade level.  He has poor motor ability, spelling is poor as well as memory . . . His behaviors are out of control."  The notes continue with that W.R. is taking concerta once a day before school and clonidiane at night since about 3 years old.  (AR. 127)  However, he was not found eligible for services.

On 06/05/06, the parent, through counsel filed a due process complaint notice charging DCPS of failure to adhere to the "child find" statute, failure to make an appropriate eligibility decision, failure to convene an IEP/MDT meeting, failure to provide him with an IEP, and appropriate placement, failure to provide the parent with an opportunity to participate in a

placement meeting and failure to provide him with compensatory education for denial of FAPE for the past two years. (AR. 26)

On 08/29/06, the due process hearing was convened. During the hearing, Dr. Derek Marryshow, a child development psychologist and a licensed school psychologist testified to the fact that due to the abundance of information DCPS had, there was enough information to make a determination as to eligibility. Dr. Marryshow testified to the fact that he has attended several IEP meetings and he worked for DCPS for four years. Dr. Marryshow further testified to the fact that due to W.R.'s documented out of control behavior coupled with his personal visit with W.R, W.R. is a child in need of special education services as an ED student. Dr. Marryshow testified that because W.R.'s BASC-2 scores were mostly in the Clinically Significant range it was clear form documentation that he was a student who was in need of special education services. Dr. Marryshow further testified that there was no need to wait for any further documentation to make an eligibility determination and that if more information becomes available, a meeting could be held to review that new information.

During the hearing the mother testified that she could not provide any further information because she was homeless and living in a shelter and as a result, could not provide the requested information. The mother testified that during the 05/10/06 meeting, she informed Ms. Everett, DCPS' social worker and the team of her homelessness. The mother also testified to the fact that W.R. has not been evaluated since he was three years old and as a result, she did not have anything for the team.

During the hearing, the social worker testified on direct that she was not aware that the mother and child were homeless and as a result, did not have any further information to provide her. However, the social work evaluation completed by the said social worker on 02/09/06 clearly shows that she was aware of his homelessness because she referred to his emotional

stability being impacted by among other things, his homelessness. (AR. 107) Ms. Rojas, DCPS'

school psychologist testified that she did not observe the "out of control" behaviors that were

observed by the teacher. However, the 01/09/06 psychological evaluation that Ms. Rojas

completed found the student to mostly score in the Clinically Significant range but yet testified

opposite of her findings in her evaluation.

During that hearing, the Assumptions' social worker testified to the fact that she made the

referral for special education. She testified that she has been seeing W.R. since he entered the

school in the 3rd grade and that he has exhibited inappropriate behaviors that have impacted his

academics.

On 09/14/06, the hearing officer issued an order dismissing the case premised on the fact

that DCPS stated they needed more information. (AR. 2) His determination was not based on the

facts of the case but rather on DCPS' contention that they needed more information.


## STATEMENT OF UNDISPUTED FACTS

1.      W.R. is an 11 year old student who was determined to need special education by

Maryland but was not receiving special education and related services in DC while attending PR

Harris, Beers, Assumptions Catholic School (Assumptions) and now at Friendship Edison PCS.

His Maryland IEP calls for 21% to 60% of his time out-of-general education setting. AR 31

2.      W.R. was attending Beers ES and was not progressing academically or emotionally, and

then he attended Assumptions Catholic School and again was not progressing academically or

emotionally. He is now attending Friendship Edison Public Charter School for this 2006/2007

school year. During his attendance at Assumptions Catholic School he continued to exhibit

behavioral and academic problems.

3.     On 12/14/05, DCPS convened a MDT meeting at which time the team indicated that "[W.R.] is really struggling in school which impacts on his self-esteem.  Auditory processing is a problem.  He has difficulty following simple directions [,] organizing his work, and sequencing his thoughts.  [W.R] is in the 4th grade [and] did not start printing until the 3rd grade.  He writes like a 1st grader.  Reading appears to be on the first grade level."  (AR. 52)

4.     During the meeting on 12/14/05, the team also stated that "school referral speaks to his areas of weakness being in all subject areas with the exception of math.  He presents with a low self-esteem, low attention span, [and] mood swings and anger is often exhibited with temper tantrums."  Id

5.     The 12/14/05 team also indicated that "[W.R.] plucks his ear until it bleeds, wanders off, and bangs on the table often. . . He was tak[ing] 27mg concerta & 50mg of Zoloft, and clodin at night to sleep (0.1mg).  He use to take adderol but he had side-effects.  [W.R.] was diagnosed with a disability since the age of 3 years old."  (AR. 52)

6.     On 07/13/04, DCPS completed a Social History Evaluation (SH) while he was attending Beers Elementary School (Beers) in DC. The SH found that he was diagnosed with multiple mental health problems (both his parents suffer from depression and bipolar disease), and he is taking . . . Abilify for his schizophrenia; Bupropion SR for his depression; Benztropine . . . and Conerta for his ADHD and other behavioral problems. According to the SH, when he is supposed to be at recess in school he will just leave.  He needs adult supervision at all times." (AR 56)

7.     On 08/20/04 DCPS completed a psycho-educational evaluation.  The evaluation found that "according to his teachers at Beers ES, [W.R.] is performing within the average range academically but his limited social skills impact his educational development.  It has been reported that [W.R.] has mood swings which endangers both him and his classmates."  The

psycho-educational further found that he was evaluated on 12/14/99 at which time he was diagnosed with "Attention Deficit-Hyperactivity Disorder and Oppositional Defiant Disorder. The diagnosis of Bipolar Disorder was deferred at that time but the examiner suggested that may also be accurate given [W.R.'s] family history." The evaluation further recommended that a clinical psychological evaluation should be completed "to determine if his social-emotional functioning is having a negative impact on his achievement. . . [W.R.] should receive psycho-social counseling to address his negative classroom behaviors." (AR. 66)

8.    His report cards has him failing his classes and unsatisfactory in reference to his conduct. His report cards indicated that he was disruptive in class, easily distracted, not prepared for class and needs to improve on turning in his assignments and completing his work. (AR. 82)

9.    According to the 12/12/05 Classroom Observation, [W.R.] could not sit still during class. He walked from seat to seat, rocked his desk back and forth, bothered a peer behind the classroom barrier, walked out of class, walked back in, went to trash can without permission, actively looked for something to pick up from the floor and picks a pencil off the floor, and pushed his foot against the classroom divider. (AR.84)

10.    The 12/12/05 teacher referral/report states that "[W.R.] has severely unpredictable behaviors which greatly interferes with [W.R.'s] work and academic progress." The report also indicates that he has weakness in reading, written expression, some parts of math, visual motor coordination, social/emotional and attention/organization. id

11.    On 01/09/06 DCPS completed a psychological report review. The report states that during the review of records, the school psychologist shared that W.R. was diagnosed with ADHD in 1999. The report indicates that a BASC-2 was completed and that a "clinically significant range suggest[s] a high level of maladjustment." The evaluation found that W.R.'s T-Score in hyperactivity, aggression, anxiety, and depression falls in the Clinically Significant

range.  His teacher reports that he is often restless, overactive, has difficulty controlling his impulse, displays aggressive behaviors, is argumentative, defiant and/or threatening to others, engages in rule-breaking behaviors, withdraws and he is pessimistic and sad.  (AR.118)

11.    The psychological report continues by stating that suicidal tendencies should be explored and his learning problems are in the At Risk range which is classified as High in the adaptive scales category. id

12.    As to his Self Report in the psychological report review, W.R. indicated that "even when I am alone I feel some one is watching me, I hear voices in my head that no one else can hear, [and] I worry when I go to bed at night."  Id

13.    On 05/10/06 DCPS convened an eligibility meeting and the notes indicate that "according to the teacher, his grade level skills are below grade level.  He has poor motor ability, spelling is poor as well as memory . . . His behaviors are out of control."  The notes continue with that W.R. is taking concerta once a day before school and clonidiane at night since about 3 years old. However, he was not found eligible for services.  (AR. 127)

14.    On 06/05/06, the parent, through counsel filed a due process complaint notice charging DCPS of failure to adhere to the "child find" statute, failure to make an appropriate eligibility decision, failure to convene an IEP/MDT meeting, failure to provide him with an IEP, and appropriate placement, failure to provide the parent with an opportunity to participate in a placement meeting and failure to provide him with compensatory education for denial of FAPE for the past two years.  (AR. 26)

15.    On 08/29/06, the due process hearing was convened.  During the hearing, Dr. Derek Marryshow, a child development psychologist and a licensed school psychologist testified to the fact that due to the abundance of information DCPS had, there was enough information to make a determination as to eligibility.  Dr. Marryshow testified to the fact that he has attended several

IEP meetings and he worked for DCPS for four years.  Dr. Marryshow further testified to the fact that due to W.R.'s documented out of control behavior and his visit with W.R, W.R. is a child in need of special education services as an ED student.  Dr. Marryshow testified that because W.R.'s BASC-2 scores were mostly in the Clinically Significant range it was clear form documentation that he was a student who was in need of special education services.  Dr. Marryshow further testified that there was no need to wait for any further documentation to make an eligibility determination and that if more information becomes available, a meeting could be held to review that new information.

16.    During the hearing the mother testified that she could not provide any further information because she was homeless and living in a shelter and as a result, could not provide the requested information.  The mother testified that during the 05/10/06 meeting, she informed Ms. Everett, DCPS' social worker and the team of her homelessness.  The mother also testified to the fact that W.R. has not been evaluated since he was three years old and as a result, she did not have anything for the team.

17.    During the hearing, the social worker testified on direct that she was not aware that the mother and child were homeless and as a result, did not have any further information to provide her.  However, the social work evaluation completed by the said social worker on 02/09/06 clearly shows that she was aware of his homelessness because she referred to his emotional stability being impacted by among other things, his homelessness.

18.    Ms. Rojas, DCPS' school psychologist testified that she did not observe the "out of control" behaviors that were observed by the teacher.  However, the 01/09/06 psychological evaluation that Ms. Rojas completed found the student to mostly score in the Clinically Significant range but yet testified opposite of her findings in her evaluation.

19.    During that hearing, the Assumptions' social worker testified to the fact that she made the referral for special education.  She testified that she has been seeing W.R. since he entered the school in the 3rd grade and that he has exhibited inappropriate behaviors that have impacted his academics.

20.    On 09/14/06, the hearing officer issued an order dismissing the case premised on the fact that DCPS stated they needed more information.  His determination was not based on the facts of the case but rather on DCPS' contention that they needed more information.

<u>**ARGUMENT**</u>
<u>**STANDARD OF REVIEW**</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered for the moving party when there is no genuine issue of material fact. In ruling on a motion for summary judgment, the trial court addresses two issues: (1) whether the pleading, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine dispute as to any material fact and (2) whether the movant is entitled to judgment as a matter of law. In addition, inferences to be drawn from underlying facts must be viewed in the light most favorable to the opposing party, and even if it is unlikely that the opposing party will not prevail at trial. <u>*Harlow v. Fitzgerald*</u>, 457 U.S. 800 (1982).

In decision interpreting Rule 56, the United States Supreme Court has disapproved any continued reluctance by trial courts to grant summary judgment in appropriate cases stating:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [rules of procedure] which are designed "to secure the just, speedy and inexpensive determination of every action."

<u>*Celotex Corp. v. Cartarett*</u>, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986)(citations omitted).

The IDEA provides for judicial review in state and federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. See 20 U.S.C. §1415(i)(2)(A).   20 U.S.C. §1415(e)(2) states that "the court shall review the records of the administrative proceedings, shall hear additional evidence at the request of the party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." District Court's review of a challenge to an administrative ruling brought under the Individuals with Disability Education Act (IDEA) base its decision on "preponderance of the evidence" in exercising its independent judgment at arriving at an appropriate placement and programming decision. 20 U.S.C. §1415(i)(2)(B); *See Lenn v. Portland School Committee*, 998 F.2d 1083 (1st Cir. 1993).

The district court reviewing an HOD should "defer to the hearing officer's factual findings based on credibility judgment unless the non-testimonial, extrinsic evidence on the record would justify a contrary conclusion." *S.H. v. State-Operated School Dist. Of the City of Newark,* 336 F.3d 260, 269-71 (3rd Cir. 2003) (citations omitted).


**A.      THE COURT SHOULD REVERSE THE HEARING OFFICER'S DETERMINATION THAT DISMISSED THE CASE BECAUSE DCPS DID NOT PRESENT ANY EVIDENCE THAT DCPS COMPLIED WITH IDEIA**

According to 20 U.S.C. §1415(f)(3)(E), ". . . a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education."  In the instant case, the hearing officer did not base his decision on whether W.R. received a free appropriate public education but rather was based on DCPS' contention that they needed more information.  Therefore, the hearing officer's determination is erroneous on its face and as a result the decision must be reversed.

According to 34 CFR 300.131, "each LEA must locate, identify and evaluate all children with disabilities who are enrolled by their parents in private, including religious, . . .schools located in the school district served by the LEA, . . .The child find process must be designed to ensure the equitable participation of parentally-placed private school children. . .  Therefore, defendant's argument that the parent placed her child in a private school is irrelevant because regardless of that fact, defendant was responsible under law to provide the student with a FAPE.

According to 34 CFR 300.304©(6), "each public must ensure that the child is assessed in all areas related to the suspected disability, including, . . . health, . . . social and emotional status, . . .  However, according to the defendant's motion for summary judgment the hearing officer made an appropriate decision by dismissing the case because DCPS expected the parent to provide the additional evaluation.  Therefore, under IDEIA, defendant's argument is clearly flawed as their motion for summary judgment did not point to any law or case law that supports their argument that the parent was the one responsible for providing the evaluation.

Although defendant's motion on page 12 states that the court should give the HOD deference because the hearing officer stated detailed reason for dismissing the case and stated the facts in his HOD, that is not the issue.  The issue is whether the hearing officer made a sound and legal decision in this case.  Defendant's motion reiterates the facts but does not make reference to the law that allows the hearing officer to shift the responsibility onto the parent to complete evaluations in all areas of the suspected disability.  In fact defendant's motion is basically requesting this court to rubber stamp a decision that is contrary to the federal law.  Additionally, according to defendant's motion if the order is 'thorough and complete' there does not need to be an applicable law to the decision made.

Additionally, contrary to defendant's analysis of the _S.H. v. State-Operated School Dist._ _Of the City of Newark,_ case, the court in that case determined that the court should "defer to the

hearing officer's factual findings based on credibility judgment unless the non-testimonial, extrinsic evidence on the record would justify a contrary conclusion." Therefore, that case does not support a notion that the court should blindly defer to the hearing officer. In the instant case, the social worker that the hearing officer determined was credible contradicted herself on the record because she stated that the mom did not tell her about her homelessness but yet the evaluation she completed referred to the issue of homelessness. Therefore, obviously putting in question her credibility in regards to sending the parent any forms to sign that the defendant refers to in their motion for summary judgment. In fact defendant's motion at no time indicated any proof of the so-called mailings. (Defendant's motion at Therefore, in no way proving that the consent forms were sent to the parent.

According to Dep't of Educ. State of Hawaii v. Cari Rae S., 158 F.Supp.2d 1190 ,1194 (D.Haw. 2001)the fact that the student was failing and had behavioral referrals were grounds for the school system to determined her a child in need of special education. Additionally, in citing to Cari Rae, Reid v. District of Columbia, 310 F.Supp.2d 137 (D.D.C., 2004) found that the court in Cari Rae was correct in it's analysis of what should put a school system on notice of a child in need of special education. Reid states that "the IDEA specifically states that an educational agency shall be deemed to have knowledge that a child has a disability if . . . the behavior or performance of the child demonstrates the need for such services . . ." Id As a result, even this jurisdiction has found that behavioral problems are reasons for a suspected disability. However, the hearing officer in this case ignored the federal law and case law and made his decision on the basis that the school system felt they needed more information but yet he did not hold the system responsible for completing the evaluation that they felt was necessary. Therefore, whether the hearing officer got the facts right or wrong is irrelevant because he did not apply appropriate law to the facts in order to come up with an appropriate decision.

## CONCLUSION

**WHEREFORE**, the Plaintiffs respectfully request this Honorable Court to grant plaintiff's motion for summary judgment and vacate the Hearing Officer's Decision entered September 14, 2006.  In addition, the court should grant the Plaintiff's request for attorneys' fees and costs for this action and the administrative proceedings.

<div align="center" style="text-align:left">

Respectfully Submitted,
THE LAW OFFICES OF CHRISTOPHER N. ANWAH, PLLC

By:_____/s/FatmataBarrie/s/_____
Fatmata Barrie, Bar #485122
LAW OFFICES OF CHRISTOPHER N. ANWAH, PLLC
10 R Street, NE
Washington, D.C. 20002
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: fbarrie@verizon.net

</div>

## CERTIFICATE OF SERVICE

I HEREBY certify that copies of the foregoing motion were electronically filed on February 21, 2008, and the court would notify parties using Court's e-file system.

_____/s/FatmataBarrie/s/_____
Fatmata Barrie

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**WANDA RICHARDSON, et al**        *
        Plaintiffs        *
        *
v.        *    **Civ. Acton No. 06-2121(CKK)**
        *
        *
**DISTRICT OF COLUMBIA, et al**        *
        Defendants        *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSE

(the paragraph numbers correspond with defendants' statement of facts)

6. Yes it is true that evaluation did not find him eligible for services as an LD student but the evaluation also found that "according to his teachers at Beers ES, William is performing within the average range academically but his limited social-emotional skills impact his educational development.  It has been reported that William has mood swings which endangers both him and his classmates." AR. 66

7. Yes the parent enrolled her son at Assumption but then what was she to do when the school system, despite the above findings and statements from his teachers, refused to provide her son with any services.

14. Yes it is true that Ms. Rojas made that finding.  However, Defendants fail to state that the entire evaluation enumerates clinically significant level in areas of aggression, opposition, internalization and so forth. AR. 6, 7, 8, 118

15. Yes Ms. Rojas made that finding.  However, Defendants neglected to state that it was two observations but the teacher and social worker observed the behaviors in the classroom frequently and Ms. Rojas' evaluation seem to agree with the behaviors indicated by the teacher and social worker

16.  Yes Ms. Rojas came to that conclusion.  However, the criteria Defendants used to

determine him ineligible was contrary to IDEA's criteria because IDEIA has changed

how an eligibility determination is made.  According to 34 CFR 300.307(a)(1) and (2)

the criteria adopted by the state to determine specific learning disability "must not

require the use of a severe discrepancy between intellectual ability and achievement for

determining whether a child has a specific learning disability, must permit the use of a

process based on the child's response to scientific, research-based intervention . . ."

19.  It is interesting how the social worker made a finding that WR was already determined to

be emotionally disturbed but yet she testified that he did not need any special education

services.

20.  Yes he has a psychiatric history.  However, as Ms. Everett's own social work evaluation

indicated, the family was homeless and as a result, the parent could not provide the

information.  AR. 56

22.  This appears to be a quote from the HOD but does not make it a fact.  The hearing

officer neglected to take note of the contradiction in Ms. Everette's testimony about the

parent not having the information due to her homelessness.

23.  True.  However, Defendants fail to state that there was not evidence provided with would

show that Defendants sent any medical release forms to the mother.

24.  Same as 23.  The parent even informed the team that a new psychiatric would not be

completed by the psychiatrist unless she pays for it. AR. 131

30.  That is true.  However, Defendants ignored the fact that the student was denied services

while attending Beers ES and as a result was not receiving any services prior to the parent

enrolling him at Assumptions.

34.  Defendants do not know what the hearing officer used in making his decision.  It is not enumerated in the HOD if he reviewed the recording or even if he truly looked at the documents.

37.  As can see the decision is based on the assumption that an evaluation **may** exist even though they were informed that it does not exist.

38.  Again erroneous decision since Ms. Rojas had an observation of the student and teacher worked him on a daily basis.

39.  Again the mother did not pull him out of special education because as indicated by Defendants' motion, Beers denied him special education services and as a result he was already not receiving any special education services.